```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION

MCKESSON GLOBAL SOURCING
LIMITED, an active foreign
private limited company,

       Plaintiff,

v.                                    Case No:  2:21-cv-782-JES-NPM

M.C. JOHNSON CO., INC., a
Florida profit corporation,
dba PRIVATE LABEL MEDICAL,
and aka M.C. JOHNSON
COMPANY, INC.,

       Defendant/Third-
       Party Plaintiff,

v.

MCKESSON MEDICAL-SURGICAL,
INC.,

       Third-Party
       Defendant.
```
_____

## OPINION & ORDER

This matter comes before the Court on third-party defendant McKesson Medical-Surgical Inc.'s (MMS) Motion to Dismiss First Amended Third-Party Complaint and Motion to Strike (Doc. #64) filed on May 12, 2022. Defendant/third-party plaintiff M.C. Johnson

(MCJ) filed a Response (Doc. #76).¹  For the reasons set forth, the motion is granted in part and denied in part.

## I.

Plaintiff McKesson Global Sourcing Limited (McKesson) began this action to recover $1,314,964 in alleged overpayments that were transferred in error to MCJ.²  Relevant to this Order is MCJ's Amended Third-Party Complaint (TPC) against MMS.  (Doc. #58.)

According to the TPC: Around June 1, 2017, MCJ and MMS entered into a Product Distribution Agreement (Agreement) which set forth terms upon which MMS would purchase, and MCJ would sell, products manufactured for MMS.  (Id. ¶ 14; Doc. #58-1.)  Around April 1, 2020, MCJ and MMS entered into Amendment 1 (Amendment) to the Agreement, which detailed MMS' purchase of two hand sanitizer products (Products A and B) from MCJ.  (Doc. #58, ¶¶ 28-32; Doc. #58-2.)  Between April 14 and June 23, 2020, MCJ shipped Products A and B pursuant to the Amendment.  (Doc. #58, ¶ 34.)

In May 2020, representatives of MCJ and MMS exchanged emails related to MMS' purchase of a third hand sanitizer product (Product C) to be delivered between June and September 2020.  (Id. ¶¶ 35-

---

¹ MCJ filed a redacted response on May 26, 2022.  (Doc. #67.)  MCJ filed an unredacted response on July 8, 2022.  (Doc. #76.)  The Court cites to that version.

² The Court detailed the allegations of McKesson Global's operative Second Amended Complaint (Doc. #39) when denying MCJ's motion to dismiss (Doc. #42).

36; Doc. #58-3.)  On May 13, 2020, MMS delivered purchase orders to MCJ for 7 million bottles of Product C (the "Purchase Orders"). (Id. ¶ 37.)  MCJ alleges that the parties intended, understood, and agreed that the Purchase Orders for Product C were governed by the Agreement and the Amendment.  (Doc. #58, ¶ 38.)

In early July 2020, MMS requested that MCJ modify the terms of its open Purchase Orders.  (Id. ¶¶ 44.)  MCJ offered via email to push production from September to December 2020, void certain orders, and reduce the price per bottle of Product C.  (Id. ¶ 46; Doc. #58-3.)  MMS agreed to MCJ's proposal, and the parties executed Modified Purchase Orders.  (Doc. #58, ¶¶ 47-48.)

Between July 3 and August 20, 2020, MCJ received four wire transfers.[3]  (Id. ¶ 50.)  MCJ believed the wire transfers were made in connection to the Modified Purchase Orders.  (Id. ¶ 52.)

In August and September 2020, MMS requested to modify the terms of the Modified Purchase Orders.  (Id. ¶ 53.)  MCJ offered via email to push production to July 2021, void certain orders, and reduce the price per bottle.  (Id. ¶ 54.)  MMS did not accept MCJ's offer.  (Id. ¶ 55.)  Instead, on September 25, 2020, MMS revoked all outstanding Modified Purchase Orders via email.  (Id.

---

[3] As discussed in the Court's Order denying MCJ's motion to dismiss McKesson Global's Second Amended Complaint, McKesson Global asserts these are overpayments allegedly made in error by McKesson Global (not MMS) to MCJ and related to McKesson Global's purchase of N95 masks.

¶ 56.) MCJ ceased production. (Id. ¶ 60.) MCJ alleges that it incurred certain lost profits and suffered "componentry costs" (e.g., hand pump componentry, shippers, bottles, gelling agents, labels, and raw materials) caused by MMS' unilateral revocation of the Modified Purchase Orders. (Id.)

In the TPC, MCJ asserts three counts against MMS: (1) breach of contract arising from the Agreement, the Amendment, and the Modified Purchase Orders; (2) equitable setoff; and (3) equitable subrogation. MMS moves to dismiss all counts for failure to state a claim. (Doc. #64.) MMS also moves to strike portions of MCJ's contract claim, specifically, MCJ's requests for lost profit damages, componentry cost damages, and attorney fees. (Id.)

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

4

accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

In considering a motion to dismiss under Rule 12(b)(6), a court generally may not look to matters outside the pleadings. Fed. R. Civ. P. 12(d). A district court may consider the allegations in the complaint, and documents attached as an exhibit to the complaint. Fed. R. Civ. P. 10(c). A district court may also consider: a document not attached to the complaint, but which

is incorporated by reference in the complaint, Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); a document attached to a motion to dismiss if (1) the document is central to the plaintiff's claim, and (2) its authenticity is not challenged, Day, 400 F.3d at 1276; SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); and a judicially noticed fact, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278-81 (11th Cir. 1999); Lozman v. City of Riviera Beach, Fla., 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 811 (11th Cir. 2015).  Otherwise, consideration of extrinsic evidence requires the Court to convert a motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 12(d).

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  "An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action."  Sprengle v. Smith Mar. Inc., No. 3:20-cv-1348-MMH-JRK, 2021 WL 2003102 at *2 (M.D. Fla. May 19, 2021).  "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Id. (citation omitted).  "The purpose of a motion to strike is to clean up the pleadings, streamline

6

litigation, and avoid unnecessary forays into immaterial matters." Hutchings v. Fed. Ins. Co., No. 6:08-cv-305-Orl-19KRS, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008). "A motion to strike is often denied unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." EmCyte Corp. v. XLMedica, Inc., No. 2:19-CV-769-JES-NPM, 2022 WL 394392, at *2 (M.D. Fla. Feb. 9, 2022) (internal quotation omitted). "[W]hen deciding a motion to strike, a court must accept the truthfulness of well-pleaded facts and cannot consider matters beyond the pleadings." Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (internal quotations omitted).

### III.

**A.  Shotgun Pleading**

Although neither party raised this issue, the Court *sua sponte* identifies the TPC as a shotgun pleading. Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015). See also Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 n.54 (11th Cir. 2008) (collecting cases). "The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." Weiland, 792 F.3d 1321.

7

In Counts II and III, MCJ "repeats and realleges the foregoing paragraphs as if fully set forth herein." (Docs. #58, ¶¶ 84, 95.) By realleging and reincorporating all prior paragraphs into each claim, MCJ caused each successive count to carry all that came before it and MCJ's last count is a combination of the entire complaint. The Court **STRIKES** "repeats and realleges the foregoing paragraphs" of paragraphs 84 and 95. Paragraphs 84 and 95 are amended as follows: "MCJ repeats and realleges paragraphs 14-76 as if fully set forth herein."

### B. Count I

MMS argues that Count I should be dismissed for failure to state a claim. Pursuant to the Agreement, both parties apply Virginia law to this claim. "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Navar, Inc. v. Fed. Bus. Council, 784 S.E.2d 296, 299 (Va. 2016) (quotation omitted).

#### 1. Failure to State a Claim

MMS first argues that MCJ fails to allege breach of the Agreement and the Amendment because the Modified Purchase Orders, which consider MMS' purchase of Product C, are not governed by the Agreement and the Amendment. (Doc. #64, pp. 14-16.) Viewing the allegations in light most favorable to MCJ, MCJ alleges that the

parties intended, understood, and agreed that the Modified Purchase Orders were governed by the Agreement and the Amendment. (Doc. #58, ¶ 38.) MCJ then details the parties' written communications demonstrating as such. (E.g., id. ¶¶ 38, 40, 49). MCJ has sufficiently pled that the Agreement and the Amendment govern the Modified Purchase Orders. See, A.C. Furniture, Inc. v. Arby's Rest. Grp., Inc., No. 4:14-CV-00029, 2014 WL 4961055, at *4 (W.D. Va. Oct. 3, 2014) (denying motion to dismiss because emails could constitute written agreement and conduct could evidence meeting of minds).

MMS also argues that MCJ fails to state a breach of contract claim because, pursuant to the Agreement, MMS was permitted to terminate the Modified Purchase Orders for cause. (Doc. #64, pp. 16-17.) MMS cites Section 8.2.5 of the Agreement (Doc. #58-1), which provides the following:

> 8.2. **Termination by Buyer for Cause**. This Agreement or any outstanding Purchase Order may be terminated by Buyer for cause, upon written notice by Buyer to Seller in the event that:
>
> 8.2.5. Seller expresses, explicitly or though its acts, before the expiration of the Term that it will not or is unable to perform its obligations under this Agreement.

MMS then cites the September 25, 2020 email from MMS to MCJ indicating that the remaining Modified Purchase Orders "will have to be cancelled today." (Id., citing Doc. #58-5.) MMS then picks

9

apart the language of the email and suggests that the email conclusively shows that MCJ repudiated the Modified Purchase Orders first, so MMS could terminate the orders for cause. The Court does not undertake such a weighted factual analysis on a motion to dismiss. And, viewing the allegations of the TPC and the email in light most favorable to MCJ, the email does not conclusively show that MCJ refused or was unable to perform first.

MMS last argues that MCJ fails to state a breach of contract claim because the undisputed evidence shows that MCJ consented to MMS' termination of the Modified Purchase Orders. (Doc. #64, pp. 18-20.) In support, MMS attaches MCJ's response to the September 25, 2020 email. (Doc. #64-1.) MCJ's email response, which was not a part of the TPC, raises an issue of fact on whether MCJ consented to MMS' revocation. The Court declines to consider it on a motion to dismiss. MMS' motion to dismiss Count I for failure to state a claim is denied.

### 2. Damages

MMS requests that the Court dismiss or strike MCJ's claims for lost profits and componentry costs arising from the breach of contract. (Doc. #64, p. 22.) There is no dispute that, under the contract, MCJ cannot recover consequential damages. (Doc. #64-1, p. 10.) MCJ, however, argues that it may recover these damages as direct damages. (Doc. #76, p. 12.)

As explained by the Supreme Court of Virginia:

10

> There are two broad categories of damages which may arise from a breach of contract. Direct damages are those which naturally or ordinarily flow from the breach; consequential damages arise from the intervention of special circumstances not ordinarily predictable. Consequential damages are compensable only if it is determined as a matter of fact that the special circumstances were within the contemplation of the contracting parties at the time of contracting. "Contemplation," in this context, includes both that which was actually foreseen and that which was reasonably foreseeable. Danburg v. Keil, 235 Va. 71, 76, 365 S.E.2d 754, 757 (1988); Morris v. Mosby, 227 Va. 517, 523, 317 S.E.2d 493, 497 (1984); Roanoke Hospital v. Doyle and Russell, 215 Va. 796, 801 n. 4, 214 S.E.2d 155, 160 n. 4 (1975). Whether claimed damages are direct or consequential is a question of law for the trial court. Whether special circumstances were within the contemplation of the parties so as to justify the recovery of consequential damages is a question of fact for the jury. Roanoke Hospital, 215 Va. at 801, 214 S.E.2d at 160.

Richmond Med. Supply Co. v. Clifton, 369 S.E.2d 407, 409 (Va. 1988).

The TPC adequately alleges that MCJ's lost profits and componentry costs are a direct and natural result of MMS' breach (see, e.g., doc. #58, ¶ 60), so these allegations will not be dismissed or stricken. E.g., Precision Franchising LLC v. K-Squared, Inc., No. 1:11-CV-00137 LMB, 2011 WL 4407936, at *5 (E.D. Va. Aug. 29, 2011), report and recommendation adopted, No. 1:11CV137 LMB/IDD, 2011 WL 4407562 (E.D. Va. Sept. 21, 2011) (quoting Manass-Owens Co. v. Owens & Son., 105 S.E. 543, 549 (Va.

11

1921)) ("Under Virginia law, a plaintiff seeking an award of lost profit damages for breach of contract must allege that the damages he seeks are the direct result of the breach and that they 'can be proved with reasonable certainty.'"); Interactive Return Serv., Inc. v. Virginia Polytechnic Inst., No. LE-3014-4, 2000 WL 489617, 52 Va. Cir. 161 (Cir. Ct. Va. 2000) ("The court holds that plaintiff in this case must also be given the opportunity to prove that its claim for lost profits is not speculative. That opportunity comes at trial, not in response to a motion for summary judgment.").[4]

### 3. Attorney Fees

MMS last requests that the Court strike MCJ's request for attorney fees in Count I because MCJ does not cite to a statutory or contractual basis for attorney fees. (Doc. #64, pp. 17-18.) In response to the motion, MCJ argues that attorney fees may be appropriate under 28 U.S.C. § 1927, Florida Statute § 57.105, or Federal Rule of Civil Procedure 11.

---

[4] See also Va. Code Ann. § 8.2-708 (a seller's damages for a buyer's nonacceptance or repudiation of a contract for goods includes incidental damages); Va. Code Ann. § 8.2-710 ("Incidental damages to an aggrieved seller include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.").

The Court finds no reason to strike the request for attorney fees because it is not "redundant, immaterial, impertinent, or scandalous matter."  E.g., Wright v. Dyck-O'Neal, Inc., No. 215CV249FTM38MRM, 2016 WL 11423435, at *2 (M.D. Fla. Apr. 26, 2016) (denying motion to strike attorney fees and costs); but see Reed v. Walt Disney Parks, No. 620CV1346ORL40DCI, 2020 WL 10457843, at *2 (M.D. Fla. Nov. 9, 2020) (collecting cases where demands for attorney fees were stricken for failure "to articulate a statutory or contractual basis for attorney fees").  If MCJ prevails, it may pursue a claim for attorney fees through an appropriate motion. See Local Rule 7.01.

### C. Count II

In Count II, MCJ alleges that, if it is found liable to McKesson Global under the Second Amended Complaint (Doc. #39), MCJ is entitled to setoff any liability by those amounts owed to MCJ by MMS. (See Doc. #72, ¶¶ 85-94.)  MCJ alleges that it may setoff such amounts because McKesson Global and MMS are interrelated companies "under the umbrella and in the name of McKesson Corp[oration]" and "have common ownership, utilize common bank accounts and/or bank funds, share business names, business functions, directors, officers, and/or employees, and enjoy unified advertising and marketing."  (Id. ¶¶ 91-92.)

The parties dispute whether Florida or Virginia law applies. MMS argues that, under either law, MCJ fails to state an equitable

setoff claim because there is no mutuality of claims between the parties. The Court agrees.

"Setoff is the right that exists between two parties to pay off their respective debts by way of mutual deduction." Wiand v. Meeker, 572 F. App'x 689, 691 (11th Cir. 2014) (citing Everglade Cypress Co. v. Tunnicliffe, 107 Fla. 675, 148 So. 192, 193 (1933)). "Setoff is permitted only where there is mutuality of claims between the parties." Id. (citing Griffin v. Gulf Life Ins. Co., 146 So.2d 901, 903 (Fla. 1st DCA 1962)). "Mutuality of claims requires that the claims exist between the same parties acting in the same capacities." Id. (citing Everglade Cypress Co., 148 So. at 193). See also Rust v. Elec. Workers Loc. No. 26 Pension Tr. Fund, No. 3:10-CV-00029, 2011 WL 4565501, at *16 (W.D. Va. Sept. 29, 2011) (quoting Broaddus v. Gresham, 26 S.E.2d 33, 37 (Va. 1943)) ("In Virginia, 'both at law and in equity, an essential requisite [of setoff] is that the debts must be mutual, that is, they must be owing between the same parties.'").

The TPC fails to allege mutual claims. MCJ's setoff claim against MMS is attempting to setoff McKesson Global's demand for the alleged overpayments against MCJ. Stated differently, MCJ demands money from MMS and McKesson Global demands money from MCJ. But, MMS does not demand money from MCJ. There are no mutual claims between the same parties. To be sure, the TPC alleges that MMS and McKesson Global are both companies under the same parent

company, McKesson Corporation. However, MCJ has cited no law – nor has the Court found any – that generally allows a party who allegedly injured one subsidiary company to pursue a setoff claim against another subsidiary company.[5] Because the TPC fails to allege mutuality of claims between MCJ and MMS, Count II is dismissed for failure to state a claim.

### D. Count III

In Count III, MCJ asserts an equitable subrogation claim against MMS. MCJ asserts that "if MCJ is caused to pay damages to McKesson Global," that payment "will be involuntarily," and MCJ will be "an innocent stakeholder who has paid, in full, a debt that it was not primarily responsible for, purely out of self-protection." (Doc. #72, ¶ 96.)

The parties dispute whether Virginia or Florida law applies to this claim. It is unnecessary to decide which law applies because, under either law, the claim is not ripe. Ripeness is a component of a district court's subject matter jurisdiction which "may (indeed must) be raised by the court sua sponte." Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior, 46 F. Supp. 3d 1254, 1266 (M.D. Fla. 2014) (citation omitted). Generally, "[a] claim

---

[5] For example, this type of setoff is generally prohibited in bankruptcy cases. See 9C Am. Jur. 2d Bankruptcy § 2703 ("Generally, a 'triangular setoff'—as when A attempts to offset an obligation owed to B against B's debt to C—is prohibited because there is no mutuality of debt between two parties.")

is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted).

As alleged in the TPC, MCJ has not made any payment or satisfied any claim on behalf of any other party. See In re Reasonover, 236 B.R. 219, 231 (Bankr. E.D. Va. 1999) (citing Federal Land Bank of Baltimore v. Joynes, 18 S.E.2d 917, 920 (Va. 1942)) ("Subrogation is an equitable remedy which substitutes another person or entity in the place of the creditor whose claim was satisfied."); Liberty Mut. Fire Ins. Co. v. Wal-Mart Stores E., LP, 269 F. Supp. 3d 1254, 1263 (M.D. Fla. 2017) (quoting Nat'l Union Fire Ins. Co. v. Se. Bank, N.A., 476 So.2d 766, 767 (Fla. 3d DCA 1985)) ("A right to subrogation arises either when a judgment is entered 'or payment has been made.'")). MCJ's equitable subrogation claim is premised on a future event (MCJ paying damages to McKesson Global), is not ripe for adjudication, and is dismissed without prejudice.

Accordingly, it is so

**ORDERED**:

1. Third-party defendant's Motion to Dismiss First Amended Third-Party Complaint and Motion to Strike (Doc. #64) is **GRANTED IN PART** and **DENIED IN PART**.

16

2. Count II of the Third-Party Complaint (Doc. #58) is dismissed without prejudice for failure to state a claim. Count III is dismissed without prejudice for lack of ripeness.

3. Count I of Third-Party Complaint (Doc. #58) remains pending.

4. MCJ's Unopposed Motion to Vacate Order granting Plaintiff's Motion to Strike (Doc. #78) is **DENIED**.[6]

**DONE and ORDERED** at Fort Myers, Florida, this  29th  day of July, 2022.

*/s/ John E. Steele*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[6] McKesson Global previously moved to strike MCJ's request for attorney fees and affirmative defense of setoff in MCJ's Answer to the Second Amended Complaint. (Doc. #69.)  MCJ failed to respond to the motion, and the Court granted it as unopposed. (Doc. #74.)  MCJ moves to vacate that Order, arguing its failure to respond was due to excusable neglect and there would be no prejudice because the setoff issue was still "open for adjudication."  The Court need not revisit its prior Order because, as discussed above, MCJ has not alleged mutual claims for setoff.

17